## WHITTIER *vs.* THE COCHECO MANUF. COMP'Y.

Where a right exists to use a certain quantity of water for propelling machinery, a change may be made in the mode and objects of the use, and in the place of using it, if the quantity used is not increased, and the change is not to the prejudice of others. As where a party had for more than twenty years used a certain quantity of water at a particular dam—*Held,* that he might open his gates and draw that quantity, without using it there, in order to use it at other works below on the same stream.

And an owner of a mill may draw a larger quantity of water through his gates than he has been accustomed to use, if he has lawfully provided the surplus, for his own use, by means of a reservoir above, and causes no injury thereby to the owner of another mill situated upon the same dam, or to other persons having rights in the stream.

CASE, for that the plaintiff, on the first of January, 1831,

was, and still is, possessed of a fulling mill, situate on the southerly side of the Cocheco river, and of a dam across the same, and had a right of drawing such portion of water from above said dam as was necessary to full such quantity of cloth or skins as the plaintiff might have occasion for; and averring that he had occasion for water to full ten thousand yards of cloth, &c., annually. Yet the defendants, on said first of January, and on divers days to the date of the plaintiff's writ, let off, and drew off, the water above said dam, in such quantities as to deprive the plaintiff of his aforesaid right, &c.

It appeared in evidence that the defendants, and those under whom they claim, had for more than fifty years possessed and occupied certain lands and mills situate on the northerly side of the Cocheco river, at a place called Waldron's falls, there being a dam across said river at that place, and had used the water of the river for said mills.

On the first of February, 1819, Winthrop Watson & Son, being the owners of an acre of land on the south side of said river, upon which the southerly end of said dam was placed, conveyed the same to the plaintiff, with a mill privilege attached thereto, &c. On the 24th of the same February, the plaintiff conveyed to Williams & Wendell all the right derived from Watson's deed, reserving only for himself the privilege of drawing such portion of water from said pond as might be necessary to full such quantity of cloth as he might have occasion for, or for fulling skins; and the defendants, by conveyance from the Dover Manufacturing Company, have all the right thus conveyed to Williams & Wendell.

About the year 1828 the plaintiff built a fulling-mill upon this acre of land, and has taken the water from the dam for the use of it, when there was sufficient water in the pond. The defendants own cotton factories about three miles lower, upon the same stream, conveyed to them by the Dover Manufacturing Company, which company, in 1825, for the purpose of securing a greater supply of water in dry seasons,

built a dam at the outlet of Bow pond, which empties into the Cocheco river above Waldron's falls ; and said Dover Company, and the defendants, have since kept up said dam, and let off the water in dry times, for the use of the factories.

At divers times between the 1st of January, 1831, and the date of the plaintiff's writ, when the water was low the defendants have hoisted their gate at Bow pond, and also at Waldron's falls, and permitted the water to run for the use of the factories below, without using it at the latter place ; and the plaintiff's flume being higher than that of the defendants, there has not been at all times water that he could use for his fulling mill.

There was no complaint that the plaintiff had been deprived of water at other times, or in any other manner than as before mentioned. Upon this part of the case, the court instructed the jury, that the defendants had a right to hoist their gates at Waldron's falls, and draw off the water without using it there, in order to supply their factories below, provided they drew no more water than the owners of the mills on the north side had been accustomed to draw, for the use of their mills, for a period of twenty years prior to 1828 ; and, further, that if they drew a greater quantity through their gates, in dry times, than the owners of said mills had been used to do, they were not liable to the plaintiff, if they had themselves supplied the additional quantity by making a reservoir above, and did not keep or draw it lower at Waldron's falls than the owners of the mills there had been accustomed to draw it, for such period of twenty years prior to 1828.

The jury returned a verdict for the defendants, and the plaintiff excepted to the instructions aforesaid.

*Hale & Woodman,* for the plaintiff.

*Christie,* and *Bartlett,* for the defendants.

PARKER, C. J. It appears, from the case, that the defend-

ants, and those under whom they claim, have for more than fifty years possessed certain mills, on the northerly side of the Cocheco river, at Waldron's falls, there being a dam across the river at that place, and that they have been accustomed to use the water there, for those mills, during that period. There does not seem to have been any mill at the southerly end of the dam, when Watson & Son, in 1819, conveyed the acre of land at that place, with a mill privilege. There is nothing to show the extent of the mill privilege which Watson & Son undertook to convey; but as the uninterrupted use of water for a period of twenty years is evidence of a grant and right to use it, Watson & Son, so far as appears, had no right to any privilege which would interfere with those under whom the defendants hold the mills on the northerly side of the river, and prevent them from using the quantity of water that they had been accustomed to do. The conveyance of the mill privilege, by the Watsons, to the plaintiff, therefore, gave him no right to any privilege adverse to that which had been exercised by the defendants' grantors; and of course the plaintiff, when, in his conveyance to Williams & Wendell he reserved to himself the right to use water for fulling cloth or skins, could not reserve to himself any rights inconsistent with those which had been, for so long a period, exercised by the owners of the mills on the northerly side of the river. They had the right of using the water to the same extent that they had been accustomed to do for a period of twenty years previous to that time.

Whether the quantity used had been increased within the period of ten years prior to 1819, or whether the owners of the mills on the north increased the quantity used by them, after that time, and before 1828, does not appear, nor does it seem to be material to this case. It does appear that they continued the use of the water without any interruption up to 1828, or about that time, when the plaintiff built his fulling mill; and by the rule before adverted to, their use of it, for the twenty years next preceding that time, furnished evi-

dence of a right, to the extent of the use during that period. If it had been increased between 1819 and 1828, the increased use within that time would not have furnished evidence of a grant.

This being the nature of the rights of the defendants, as derived from the owners of the mills on the north side of the river, at the time when the plaintiff complains that they drew off the water to his injury; it appears that, being desirous of using the water at their factories below, instead of using it in the operation of their mills at Waldron's falls, they hoisted their gates and permitted the water to flow through them, without any use of it at that place. There is nothing in this injurious to the plaintiff, unless they in this way drew more water than they had the right to use. It is settled that where a right exists to use a certain quantity of water, a change in the mode and objects of the use, without increasing the quantity, is no violation of the right. 2 *N. H. R.* 255, *Bullen* vs. *Runnels;* 6 *N. H. R.* 22, *Johnson* vs. *Rand.* The plaintiff would have had no ground of complaint had the defendants erected their factories at Waldron's falls, and applied the water to them, to the extent that it had been used there; and his rights are no more prejudiced by the defendants' opening their gates, and using the water three miles below, provided they use no greater quantity, than they would be by a change of the use at that place. It is immaterial to the plaintiff at what spot the defendants apply the water to a wheel, or what machinery that wheel turns, so long as they do not exceed their rights in the quantity they use. 1 *Barn. & Ald.* 261, *Saunders* vs. *Newman;* 4 *Mason's R.* 404, *Tyler* vs. *Wilkinson.* The instructions to the jury on this branch of the case seem to be fully warranted by the cases above cited.

The next question arises upon the instructions to the jury, that the defendants might draw through their gates, in dry seasons, even a larger quantity of water than they had been accustomed to draw prior to 1828, if the excess was furnish-

ed by themselves, by means of a reservoir they had construct-
ed above.    This part of the case depends upon some special
circumstances, probably not often existing.    The defendants
appear to have provided a supply of water at Bow pond, the
outlet of which empties into the Cocheco river, for the use
of their factories in time of drought.    There is no complaint
that in making provision for this supply they have infringed
any rights.    If there was, it could not be tried in this case.
In order to use this water at their factories in Dover, it must
pass Waldron's falls ; and the question is, whether the de-
fendants are obliged to shut their gates at that place, so that
the plaintiff may have the use of the additional water thus
provided as it passes those falls, or to use it in part themselves
there, in order that the plaintiff may use it with them ; or
whether they may suffer their gates to stand open, and this
additional water to pass without use by any one.

On the case before us, the plaintiff has no right to have
this water pass Waldron's falls.    The defendants may pen it
back, and permit it to evaporate without suffering it to come
into the Cocheco river.    It is derived from a reservoir pro-
vided by them for their own purposes, and the plaintiff can
maintain no action for depriving him of the use of it in that
mode.    On what principle, then, is his right infringed, if
they let the water into the river, hoist their gates at Wal-
dron's falls and permit it to pass by ? on what ground are
they obliged to pen it up there, for the plaintiff 's benefit ?

Suppose, instead of a mill, the plaintiff was the owner of
a meadow, lying upon the Cocheco, above Waldron's falls,
which in ordinary stages of water, in the summer, prior to
the construction of the reservoir at Bow pond, had not been
affected by the water ; and that if the defendants were now
to let the water out of the reservoir, in the summer, and pen
it up by the dam at Waldron's falls until they had occasion to
use it for their works there, the plaintiff 's meadow would be
overflowed thereby and injured.    He would most clearly have
a right to complain of that, and his complaint would be, in

substance, that the defendants did not open their gates there and let the water pass; but that by means of their dam they threw the water back upon his land. This may serve to show that he cannot object to the act of the defendants in drawing the water through their gates, unless he can show a right to the use of it, and a duty upon the part of the defendants not to deprive him of that use. As the owner of a mill, situate on the river, he would have been entitled to the use of it from the mere fact that it run in the channel, had not the defendants provided it and turned it into the river for their own use; and on the other hand, as the owner of a meadow, he would have been subjected to the injury it might have occasioned him, without any right of redress, but for the same reason. The defendants' rights and duties are not dedependant upon the mere fact whether the plaintiff owns a mill, or a meadow. There must be something beyond that. Some other person or persons may, as owners of land, have a right of action against the defendants, should they detain this water at Waldron's falls, as the plaintiff contends they ought to do. Suppose, again, the plaintiff, being the owner of the mill, was also owner of land above, which would be affected by this water. It would present a strange case, if he had the right to sue the defendants if they hoisted their gates and let the water run through, on account of the injury thereby done to his mill; and the right to sustain an action against them for the injury done to his land above, if they shut their gates and detained the water there.

These suppositions are made merely for the purpose of testing the grounds upon which the plaintiff's claim rests, so far as this surplus water is concerned; and we are of opinion that the plaintiff wholly fails to establish a right to the use of it, and of course to show that the act of the defendants, in hoisting their gates and letting it pass, is an injury to him.

If the defendants have transcended their rights by penning the water back at Bow pond, and then letting it off at a dif-

ferent period of the year, by reason of which the plaintiff is injured, that might furnish a ground of action ; but the present action is not brought for any injury of that character, nor would the facts presented in this case sustain such an action, if it was before us.

We have considered this case as if Watson & Son, when they conveyed, in 1819, could grant the right to use, at the southerly end of the dam, all the water ordinarily running in the stream, beyond the quantity which the defendants, and those under whom they claim, had been accustomed to use on the northerly side. Whether, however, Watson & Son could convey such a right ? or whether the right to the use of such water would belong equally to the owners on both sides of the river ? or whether the long continuance of the mills on the northerly side, without any use at the southerly end of the dam, is to be regarded as evidence of a right to erect a dam and use all the water of the river at pleasure upon the north side ? are questions which we have not considered, and upon which we do not intend to intimate an opinion.

*Judgment for the defendants.*